# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| LISA THIMMESCH, | |
| Plaintiff, | No. C13-4090-MWB |
| vs. | **REPORT AND** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | **RECOMMENDATION** |
| Defendant. | |

———————————

Plaintiff Lisa Thimmesch seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Thimmesch contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be reversed and remanded for further proceedings.

## I.    BACKGROUND

Thimmesch was born in 1960 and completed high school. AR 45, 183. She previously worked as a kitchen helper and housekeeping cleaner. AR 284. She protectively filed for SSI on July 1, 2009. AR 183. In her initial disability report, Thimmesch alleged that she was disabled due to depression and problems with her feet. AR 187.

Thimmesch's claims were denied initially and on reconsideration. AR 101-04. She requested a hearing before an Administrative Law Judge (ALJ) and on February 9, 2012, ALJ Jan Dutton held a hearing during which Thimmesch and a vocational expert (VE) testified. AR 36-64.

On February 21, 2012, the ALJ issued a decision finding Thimmesch was not disabled since July 1, 2009. AR 15-29. Thimmesch sought review of this decision by the Appeals Council, which denied review on July 24, 2013. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. § 416.1481.

On September 23, 2013, Thimmesch commenced an action in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *accord* 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th

Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that

the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### *III.    ALJ'S FINDINGS*

The ALJ made the following findings:

(1)    The claimant has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date (20 CFR 416.971 *et seq.*).

(2)    The claimant has the following severe combination of impairments:  major depressive disorder, plantar fasciitis; left hip pain.  Mental – borderline intellectual functioning; and learning disorder (20 CFR 416.920(c)).

(3)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), i.e., she can lift and carry 20 pounds occasionally and 10 pounds frequently, and she can sit, stand, and walk 6 hours each in an 8-hour workday; except, she has postural limitations and can occasionally climb, balance, stoop, kneel, crouch, and crawl and she has mental limitations including the ability to perform no more than simple, unskilled work at SVP 1-2 that is routine and repetitive and does not require extended concentration or attention.  Social interaction may be occasional, but she must avoid intense or frequent contact with others.

(5)     Step 4 – The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

(6)     Step 5—other work: Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.

(7)     The claimant has not been under a disability, as defined in the Social Security Act, since July 1, 2009, the date the application was filed (20 CFR 416.920(f)).

AR 17-28.


## IV.     THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers

both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Thimmesch argues the ALJ's decision is not supported by substantial evidence for the following reasons:

I.    The ALJ failed to examine the appropriate Listing for intellectual disabilities.

II.    The ALJ erred in evaluating the medical opinions and credibility of the claimant and third-party witness in assessing the RFC.

III.    The ALJ failed to adequately examine the VE.

I will discuss these arguments separately below.


### A.    ALJ's Evaluation of Listings

Thimmesch argues the ALJ erred at Step Three because she failed to examine whether Thimmesch's borderline intellectual functioning and learning disorder met or equaled Listing 12.05.  The only Listings the ALJ considered were 12.02 for Organic Mental Disorders and 12.04 for Affective Disorders.  Thimmesch contends that her IQ score of 72 should have alerted the ALJ to consider listing 12.05 because the Social Security Administration Program Operations Manual System (POMS) mandates a close inquiry into Listing 12.05 where a claimant's IQ is barely above 70.[1]

At Step Three, the ALJ must determine whether a claimant meets or equals an impairment described in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010).  "To meet a listing, an impairment must meet all of the listing's specified criteria."  *Id.* at 593.  "An impairment is medically equivalent under the regulations if it is 'at least equal in severity and duration to the criteria of any listed impairment.'"  *Id.* (quoting 20 C.F.R. § 416.926(a)).  The relevant question is whether the ALJ "consider[ed] evidence of a listed

---

[1] There is also evidence from Vocational Rehabilitation Services that Thimmesch was previously assigned an IQ score of 64 from Le Mars Community High School Area Education Agency.  AR 441.  However, that assessment is not included in the record.

impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (quoting *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006)). "The fact that the ALJ d[oes] not elaborate on this conclusion does not require reversal [where] the record supports her overall conclusion." *Karlix*, 457 F.3d at 746.

It is undisputed that the ALJ did not discuss Listing 12.05C, which provides:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Thimmesch contends she meets the following requirements of Section C:

> C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function

Thus, to meet Listing 12.05C, a claimant must show three elements: "(1) a valid verbal performance, or full scale IQ score of 60 through 70, (2) an onset of the impairment before age 22, and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *McNamara v. Astrue*, 590 F.3d 607, 610-11 (8th Cir. 2010); *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) ("This court agrees with the Commissioner that the requirements in the introductory paragraph are mandatory.") (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05).

The Commissioner contends the ALJ was not required to discuss Listing 12.05C because Thimmesch fails to meet all of the requirements of the Listing. Most notably, she points out that Thimmesch's IQ score of 72 is above the required range of 60 to 70. Thimmesch contends that her impairment is the "medical equivalent" of the listed

impairment and that POMS requires the ALJ to consider Listing 12.05C when a claimant's IQ is barely above 70. The relevant part of POMS states:

> D. Determining Medical Equivalence in Particular Situations
>
> 1. Medical Equivalence And Mental Retardation
>
> Listing 12.05, Mental Retardation applies primarily to adults with significantly subaverage intellectual functioning and deficits in adaptive behavior that were initially manifested in the individual's developmental period (before age 22). As with other mental impairment categories, the focus of Listing 12.05 is on the individual's inability to perform and sustain critical mental activities of work. Contrasted to other mental impairments that have A and B (or C) criteria, Listing 12.05 has four sets of criteria that are to be considered separately.
>
> . . .
>
> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056.

I agree with Thimmesch that this section of POMS requires consideration of whether her impairment is the medical equivalent of the Listed impairment. I also find that Thimmesch's slightly higher IQ score of 72 does not automatically preclude a finding that her impairments of borderline intellectual functioning and learning disorder are medically equivalent to the Listed impairment. Rather, POMS indicates that this determination depends on any additional and significant work-related limitations from

other physical or mental disorders that could support a finding of medical equivalence, in addition to the other requirements.

There is at least some evidence that Thimmesch would meet the other requirements of Listing 12.05C. As for the requirement of whether the onset of her borderline intellectual functioning and learning disorder occurred before age 22, the record contains evidence that Thimmesch required special education in school. AR 425. Thimmesch's mother provided a statement that Thimmesch graduated high school through the Special Education Department. AR 221. Thimmesch also reported to the consultative examiner that she was in special education from 6th through 12th grade. AR 406. Her school records indicate she was in special education in 2nd, 4th and 7th grades. AR 435-36. The school records indicate her cooperation traits were average in kindergarten through sixth grade. AR 436. Her emotional control and initiative traits were below average during those grades and her reliability traits were inferior or below average. *Id.* In addition to this evidence, Thimmesch argues courts have generally found that IQ scores are stable over time in the absence of any evidence to the contrary. *See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (citing cases).

There is also evidence supporting the requirement that Thimmesch has a physical or other mental impairment imposing additional and significant work-related limitations of function. Thimmesch's other severe impairments include major depressive disorder, plantar fasciitis and left hip pain. AR 18. The ALJ considered medical evidence and medical opinions related to these impairments as well as statements from Thimmesch and her boyfriend. She concluded that Thimmesch's physical impairments limited her such that she could perform light work, meaning she could lift and carry 20 pounds occasionally and 10 pounds frequently. She could sit, stand and walk 6 hours each in an 8-hour workday and had postural limitations such that she could only occasionally climb, balance, stoop, kneel, crouch and crawl. Her mental impairments imposed limitations of performing no more than simple, unskilled work at SVP 1-2 that is routine and repetitive and does not require extended concentration or attention. Her social interaction could be

occasional, but she must avoid intense or frequent contact with others.  AR 19.  These limitations in Thimmesch's RFC suggest that her other impairments may impose additional and significant work-related limitations in function.

Because the ALJ failed to discuss whether Thimmesch's impairments of borderline intellectual functioning and learning disorder were medically equal to Listing 12.05C or why this Listing was ignored, I find that this case should be remanded to the ALJ.  *See Foster v. Astrue*, C 11-3063-MWB, 2012 WL 5386382, at *5 (N.D. Iowa Nov. 1, 2012) (adopting Report and Recommendation to remand for further proceedings based in part on ALJ's failure to discuss Listing 12.05 or explain why it was ignored when there was evidence that claimant met two of the three criteria); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ failed to support his finding at Step Three that claimant's impairments did not equal Listing 12.05C and it was not clear from his decision that he even considered whether the claimant met the requirements).  While the applicability of the Listing may not be as apparent here as it was in *Foster* and *Chunn* (where both claimants' IQ scores fell within the required range of 60 to 70), I find that remand is necessary given (a) the guidance from POMS indicating that slightly higher IQ scores can qualify for a "medical equivalence" finding, (b) other evidence in the record indicating Thimmesch's IQ may actually fall within the required range (AR 441) and (c) evidence that supports the other two requirements of Listing 12.05C.  On remand, the ALJ should conduct an analysis of Listing 12.05C and make specific findings concerning that Listing.


## B.    *RFC Determination*

### 1.    *Medical Opinions*

Thimmesch argues the ALJ erred in evaluating the medical opinions.  She contends the ALJ should have given more weight to the opinions of Dr. Harlan Stientjes (the consultative examiner), Ms. Koder (a social worker) and Charles Tilley (a physician's

assistant (PA) and the claimant's treating source). The Commissioner argues the ALJ provided good reasons for the weight she assigned to each of these opinions which are supported by substantial evidence in the record as a whole.

With regard to Dr. Stientjes's opinion, Thimmesch argues the ALJ failed to account for several of the limitations he identified and, even, one of his diagnoses. Specifically, she points out that Dr. Stientjes found that Thimmesch would have difficulty maintaining employment and would require external prompts for even simple and routine tasks. He also diagnosed Thimmesch with personality disorder. Thimmesch contends the ALJ was required to address these limitations and diagnosis.

Generally, the opinion of a one-time consultative examiner does not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). The ALJ must consider the following factors in deciding the weight to give any medical opinion:

> (1) length of the treatment relationship and the frequency of examination,
>
> (2) nature and extent of the treatment relationship,
>
> (3) supportability,
>
> (4) consistency [with the record as a whole],
>
> (5) specialization,
>
> (6) other factors [which tend to support or contradict the opinion].

20 C.F.R. § 416.927(c). An ALJ may not substitute his or her own opinion for that of a physician or draw his or her own inferences from medical reports. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

The ALJ summarized Dr. Stientjes's consultative examination findings from November 13, 2009, and August 7, 2010. AR 22. In 2009, Dr. Stientjes opined that Thimmesch could understand and remember simple oral instructions, but would require external prompts for simple, routine tasks. *Id.* She was deferential but also avoidant of

social interaction. He did not think she would be able to operate most equipment safely. *Id.* Her response to workplace changes required "highly supportive supervision" and her employment beyond "marginal and menial positions" was unlikely. *Id.* In 2010, Dr. Stientjes noted that Thimmesch's adaptive behavior was likely in the borderline range, although her written expression was fairly well organized and coherent and her rote skills were relatively intact. *Id.* He found she could understand and remember simple oral and written instructions, but would benefit from a routine. *Id.* He noted her interactions with others were appropriate, although her coworkers would likely find she focused too much on her physical problems. *Id.* Her response to workplace changes would require individual attention, reminders and clear external structure. *Id.* Later in her opinion, the ALJ assigned weight to the various medical opinions in the record, and gave "considerable weight" to Dr. Stientjes's opinion. However, she did not agree with his suggestion that Thimmesch would need extra supervision. AR 25.

The ALJ's evaluation of Dr. Stientjes's opinions is supported by substantial evidence in the record as a whole. Notably, Dr. Stientjes found that Thimmesch suffered from borderline personality disorder in his 2009 consultative examination, but not in his 2010 consultative examination. AR 22. As for the limitations, the ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). "'An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'" *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995).

The additional limitations of difficulty maintaining employment and needing external prompts for simple and routine tasks that Thimmesch references were noted in Dr. Stientjes's 2009 opinion. The ALJ did not err by excluding these particular limitations from the RFC. Dr. Stientjes's opinion that Thimmesch has difficulty

maintaining employment is not a medical opinion and deserves no deference. *See Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) ("[S]tatements that a claimant could not be gainfully employed 'are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner].'"). Dr. Stientjes did not mention a limitation of requiring external prompts for simple and routine tasks in his 2010 opinion. Indeed, he found Thimmesch was capable of understanding and remembering simple oral and written instructions and would benefit from a routine. AR 446. This is consistent with the limitations of simple, unskilled work that is routine and repetitive and does not require extended concentration or attention, as provided in the RFC. I find that the ALJ adequately accounted for all the limitations identified by Dr. Stientjes that are supported by substantial evidence in the record as a whole.

With regard to Koder's opinion, Thimmesch alleges the RFC does not account for Koder's finding that Thimmesch could not be expected to function effectively for more than 30 percent of an 8-hour day and, in most areas, she would be able to function 20% or less of an 8-hour day. Thimmesch also contends the ALJ did not account for Koder's concerns that Thimmesch would be unable to tolerate virtually any change in routine. The Commissioner points out that Koder's opinion was issued in 2004 and considered in a previous decision. AR 72. While the date on her evaluation is easily mistaken for 2009, rather than 2004, the fact that Koder's opinion was discussed in a previous decision dated December 20, 2004, indicates it was issued in 2004. AR 72-75, 344-45.

The ALJ was not required to discuss Koder's opinion because it is significantly outdated from Thimmesch's current alleged onset date of July 1, 2009. Nonetheless, the RFC adequately accounts for the limitations Koder had identified at that time. For instance, Koder indicated Thimmesch "works better with little disruption with routine tasks that do not change" and her mental health symptoms increase when she is under stress from changes. AR 344-45. The ALJ adequately accounted for these concerns in the RFC by providing limitations of simple, unskilled work that is routine and repetitive

and does not require extended concentration or attention. AR 19. The ALJ did not err by failing to discuss Koder's opinion from 2004.

Finally, Thimmesch contends the ALJ did not give enough weight to her treating source, Charles Tilley, PA. Specifically, she argues the ALJ should have included Tilley's limitation that she would likely have two unexcused absences from work each month. The ALJ noted that Tilley[2] treats her physical problems with over-the-counter medication. AR 20. He began seeing Thimmesch on December 9, 2011, when she saw him for an initial psychiatric evaluation. AR 23. He diagnosed her with posttraumatic stress disorder, learning disorder and mild mental retardation. She was prescribed medication. *Id.* Tilley also assigned her a global assessment of functioning (GAF) score[3] of 45[4] on October 21, 2001, and a score of 80[5] on December 22, 2011. *Id.* The ALJ also considered a medical capacity assessment provided by Tilley on December 23, 2011. AR 25. In this assessment, Tilley noted Thimmesch had moderate limitations in several areas of functioning and also stated she had "intermittent difficulty but can generally perform satisfactorily in the area, but not always." *Id.* In support of the moderate limitations he identified he noted she was depressed and had mild mental retardation.

---

[2] The ALJ mistakenly refers to Tilley as "Tilles" in the opinion.

[3] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV).

[4] A GAF of 41 to 50 indicates the individual has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). DSM-IV at 34.

[5] A GAF score of 71-80 means that if symptoms are present, they are transient and expectable reactions to psychosocial stressors (*e.g.*, difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork). DSM-IV at 34.

The ALJ considered Tilley's opinion that Thimmesch would likely be absent from work about twice in an average month, but also noted he said this would depend on her symptomatology and medication effectiveness. AR 26, 497. The ALJ gave minimal weight to his opinion, stating there were no supporting office notes from Tilley or Thimmesch's counselor who worked in the same office. She noted that the dramatic improvement in Thimmesch's GAF score after she began taking her medication seemed to indicate Thimmesch responded well to her medication, thereby lessening the likelihood of unexcused absences. In addition, the VE opined that absence from work two days a month would be tolerated by some employers, but not others. *Id.*

I find that the ALJ's evaluation of Tilley's opinion is supported by substantial evidence in the record as a whole. It was unnecessary to include an absenteeism limitation in the RFC because Tilley indicated it would depend on the effectiveness of Thimmesch's medication. Given the improvement in Thimmesch's GAF score after taking the prescribed medication for a couple of months, it was reasonable for the ALJ to conclude that the medication was indeed effective and that absenteeism was not a limitation supported by substantial evidence. Furthermore, the other moderate limitations identified by Tilley are either incorporated into the RFC or are not supported by substantial evidence in the record, including Tilley's own treatment notes. Finally, although Tilley is Thimmesch's treating source, he is not considered an acceptable medical source under the regulations. *See* 20 C.F.R. § 416.913(a) (listing acceptable medical sources which do not include physician assistants). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). For these reasons, the ALJ's evaluation of Tilley's opinion is supported by substantial evidence in the record as a whole.

The ALJ gave appropriate weight and consideration to the medical opinions in the record and her evaluation of them is supported by substantial evidence in the record as a whole. The ALJ need not revisit this aspect of her decision on remand.

## 2.    Credibility Findings

Thimmesch contends the ALJ also erred in evaluating her credibility and the credibility of her third-party witness and boyfriend, Garry Wood.  Thimmesch argues her own statements are credible because the limitations she identified could reasonably be expected to grow out of her impairments.  Additionally, she asserts that the waxing and waning of her symptoms is not a good reason to discredit their severity.  She also contends the ALJ overstated the extent of her daily activities.  As for Mr. Wood, Thimmesch argues his testimony should have been given more weight and any alleged financial motivation he may have is not a good reason to discredit him.

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions.  *Polaski*, 739 F.2d at 1322.  The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000).  The ALJ does not need to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints.  *Goff*, 421 F.3d at 791.  "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints."  *Singh v. Apfel*, 222 F.3d 446, 452 (8th Cir. 2000).  The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

The ALJ summarized Thimmesch's testimony, noting she stated she has low intelligence and problems reading and spelling.  AR 20.  She has never worked full-time and last worked as a housekeeper in November and December 2011, but quit because she could not handle the stress.  *Id.*  She estimated she could walk 20 to 30 minutes at a time,

but would limp and could not sit long before she got tired and needed to move around. *Id.* Thimmesch also described problems with her knee and said she treats it with over-the-counter medication and icepacks or soaking it in the tub. *Id.* She stated she has a "really bad" memory and did not think she could work at an easy job because she cannot sit or stand in one spot for too long. *Id.*

Before discussing Thimmesch's credibility, the ALJ cited the *Polaski* factors. She found that Thimmesch was credible "to the extent that she has a history of special education and objective evidence of borderline intellectual functioning as well as a history of treatment for depression that has required ongoing medical management . . . ." AR 23. However, the ALJ noted that since her alleged onset date of July 1, 2009, there is scant evidence of treatment and the record shows a good response to mental health treatment as evidenced by her higher GAF score after taking the medication prescribed by Tilley. *Id.* As for her physical impairments, the ALJ noted she has received treatment for her foot problems, but there is no evidence of ongoing treatment for her right knee, beyond the two times she was seen. Her most recent exam in September 2011 revealed that her right lower extremity was tender to palpation to the posterior knee, but she had full extension and flexion and full weight bearing. She was prescribed medication for muscle strain and right knee pain. *Id.* Finally, the ALJ noted that although Thimmesch had mentioned vision problems, there was no evidence she had mentioned this to a physician or that the consultative examiner noticed any vision deficits in conducting his testing. *Id.*

The ALJ's other reasons for discrediting Thimmesch included the fact that she had made "several unsuccessful bids for supplemental security income, with two progressing to the hearing level and denied by Administrative Law Judges." AR 24. Thimmesch also had an "unimpressive work history" which raised doubts about her motivation to work and the availability of other sources of income. *Id.* Although Thimmesch had denied receiving any income from the family farm, the ALJ noted Thimmesch told Tilley in December 2011 that her "adoptive brother inherited the family farm and she gets a

couple of thousand dollars every fall from the farm that her brother gives to her and the other siblings, and she uses this money as part of a way to help pay bills and things like that." *Id.* The ALJ also considered Thimmesch's daily activities, noting that she does dishes, prepares microwavable meals and has her children and grandchildren over to visit. *Id.* She also stated in October 2009 that she enjoys doing simple puzzles, which the ALJ noted requires some degree of concentration. *Id.* The ALJ did not find that Thimmesch's self-imposed limitations of only being able to lift 10 to 20 pounds, sit 30 minutes at a time for 4 to 5 hours a day, stand for 10 to 15 minutes at a time for a total of 1 hour a day, walk 1 hour a day and nap for 2 hours a day were supported by any recommendation from a treating source. *Id.* However, the ALJ did note that her difficulty with standing for long periods of time was reasonable in October 2009 because she had recently sought treatment for foot complaints and was undergoing physical therapy. After a few sessions her prognosis was good and there is no further evidence of complaints or treatment for her plantar fasciitis. *Id.* Finally, the ALJ noted that Thimmesch used conservative treatment for her pain symptoms including over-the-counter medication and application of heat or ice.

I find that these are good reasons supported by substantial evidence for discrediting Thimmesch's subjective allegations. The evidence reveals many of Thimmesch's symptoms are either well-controlled with medication or require conservative treatment. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) ("Impairments that are controllable or amenable to treatment do not support a finding of total disability."); *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("'A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications.'") (quoting *Singh*, 222 F.3d at 453). There is also little objective medical evidence or recommendations from treating sources supporting the severity of limitations that she alleges. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (lack of significant medical restrictions is inconsistent with complaints of disabling pain); *Blakeman v. Astrue*, 509 F.3d 878, 882

(8th Cir. 2007) ("The issue is not whether Blakeman was credible in testifying that he naps each weekday afternoon he is not working. The issue is whether his heart condition *compels* him to nap each afternoon."). Her poor work history and inconsistent statements about other sources of income are also good reasons for discrediting her allegations. *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (finding the ALJ properly discredited claimant in part due to his sporadic work record reflecting relatively low earnings and multiple years with no reported earnings showing a potential lack of motivation to work); *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) ("An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole."). Even if the ALJ did overstate Thimmesch's daily activities, the ALJ provided several other good reasons for discrediting Thimmesch that are supported by substantial evidence. Therefore, I will defer to her credibility determination. *See Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) (stating when an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination).

As for Mr. Wood's credibility, the ALJ summarized his statement from May 17, 2010. He stated Thimmesch was unable to work because of her foot pain and inability to follow orders. He had to remind her about daily hygiene activities and noted she could prepare simple meals, but he did most of the cooking and housecleaning. AR 26. She would attend church once in a while, but generally did not spend time with others. He thought she could lift 20 pounds and walk about 20 minutes before needing to rest 10 minutes. She had trouble understanding instructions and could not pay attention for more than 10 minutes. She also could not handle stress or changes in her routine well and she would get paranoid for no apparent reason. *Id.*

The ALJ gave Mr. Wood's statements minimal weight. She reasoned that the statements did not establish that Thimmesch was disabled and, by virtue of his relationship with Thimmesch, he could not be considered a disinterested third party witness. *Id.* Additionally, the ALJ found his statements were inconsistent with the

preponderance of opinions and observations of the medical doctors. *Id.* Thimmesch cites cases from other circuits holding that a lay witness's close relationship to the claimant cannot be a reason for rejecting his or her testimony. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). However, in this circuit such a relationship is a valid reason for discrediting a third-party statement. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) ("Corroborating testimony of an individual living with a claimant may be discounted by the ALJ, as that person has a financial interest in the outcome of the case."). The ALJ's additional reasons that Mr. Wood's statements (a) failed to establish that Thimmesch is disabled and (b) were inconsistent with the preponderance of the opinions and observations of medical doctors, are also good reasons supported by substantial evidence. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 2006) (stating an ALJ may discount corroborating testimony on the same basis used to discredit the claimant's testimony).

The ALJ's credibility determinations concerning Thimmesch and Mr. Wood are supported by substantial evidence in the record as a whole. The ALJ need not conduct a new credibility determination on remand.

## C.    *VE Testimony*

Thimmesch argues the ALJ did not meet her duty to fully and fairly develop the record because she failed to include certain limitations in the hypothetical to the VE. She contends the ALJ should have asked the VE about Thimmesch's ability to perform work with the limitations identified by Dr. Stientjes, Koder and Tilley as discussed *supra* in section B(1). Specifically, Thimmesch argues the ALJ failed to include limitations of her need to take frequent breaks due to pain and her inability to stand or walk very long.

The ALJ provided the following hypothetical to the VE:

> For the first question I'm going to use light, unskilled. Assume and [sic] individual who can occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, could stand, sit or walk for six hours in an eight-hour day . . . .

> And from a mental standpoint, only unskilled work, SVP: 1,
> 2, routine, repetitive, doesn't require extended concentration
> or attention, and social interaction can be occasional, but
> avoid intense or frequent. And then I'm also going to add on,
> going back to the physical, that she could occasionally do
> postural activity, climb, balance, stoop, kneel, crouch, crawl.
> With that functional capacity, could such a person return to
> past work?

AR 60-61. The VE answered that with these limitations, Thimmesch could return to her past work as a housekeeping cleaner. AR 61. She also thought Thimmesch could perform other work available in the national economy such as inspector packager, small products assembler and bottling line attendant. *Id.* All of these were unskilled light jobs. AR 62. According to the VE, about 50 to 55 percent of unskilled sedentary jobs would also be appropriate. *Id.* Thimmesch's attorney then added a limitation that the person would be unable to maintain concentration, persistence or pace such that her productivity would be reduced to about 80 percent of the average worker. The VE stated that if this limitation was present on a consistent basis the person would not be able to sustain competitive employment. *Id.* The attorney then asked about two or more unscheduled absences from work each month. *Id.* The VE responded that it would vary with the employer and two days per month would be acceptable for some employers, but more than two would generally be considered excessive absenteeism. AR 63.

"A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). The hypothetical question must include "those impairments that the ALJ finds are substantially supported by the record as a whole." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when '[t]here is no medical evidence that those conditions impose any restrictions on [the claimant's] functional capabilities.'" *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (quoting *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994)).

I find that the ALJ's hypothetical question to the VE accounted for all of Thimmesch's impairments that are supported by substantial evidence in the record as a whole. As discussed *supra* in Section B(1), the ALJ provided good reasons supported by substantial evidence for excluding some of the additional limitations identified by Dr. Stientjes and Tilley and she was not required to discuss the limitations set forth in Koder's 2004 opinion. Nor was the ALJ required to include a limitation addressing Thimmesch's allegations that she needed to take frequent breaks due to pain and could not stand or walk very long, as the ALJ properly found that these limitations were not supported by the record. The ALJ reasoned that Thimmesch's prognosis had been good after she injured her foot and completed physical therapy, her leg and hip pain were treated with over-the-counter medication and ice or heat application and no treating source recommended that she should limit her standing and walking to the degree Thimmesch alleged. AR 20-21, 23-24. The ALJ did not err by excluding these limitations from the RFC or hypothetical.

The ALJ also considered a hypothetical incorporating the absenteeism limitation. However, as explained above, the ALJ appropriately excluded this limitation from the RFC based on (a) Tilley's comment that absenteeism would depend on the effectiveness of Thimmesch's medication and (b) evidence that the medication appeared to be working. Even so, the VE's response to the hypothetical that included an absenteeism limitation indicated that she could not estimate whether that limitation would narrow the job pool because two unexcused absences per month might be acceptable to some employers. AR 62-63. In addition, the ALJ's finding at Step Five was an alternative finding, as she concluded at Step Four (based on the VE's testimony) that Thimmesch could return to her past relevant work as a housekeeping cleaner. For these reasons, I find the ALJ's hypothetical question to the VE included all of Thimmesch's credible limitations. As such, the VE's testimony constitutes substantial evidence supporting the ALJ's decision that Thimmesch is able to perform work available in the national economy. The ALJ need not obtain new VE testimony on remand.

## VI.    CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Thimmesch was not disabled be **reversed and remanded** for further proceedings and that judgment be entered against the Commissioner and in favor of Thimmesch.  On remand, the ALJ shall consider whether Thimmesch's impairments of borderline intellectual functioning and learning disorder meet or are medically equivalent to Listing 12.05C and shall explain her findings.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).


**IT IS SO ORDERED.**

**DATED** this 27th day of May, 2014.


_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE